**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 1:19-CR-150** |
| | : | |
| **v.** | : | **(Judge Mannion)** |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **LAZERICK JAMAL DIGGS** | : | |

## MEMORANDUM AND ORDER

### I.    Introduction

Lazerick Diggs is a criminal recidivist with a criminal record spanning over a decade, including convictions for drug trafficking and firearms offenses. Additionally, the charges Diggs currently faces were allegedly committed while the defendant was on state parole. Notwithstanding these factors which caution against the defendant's release, this case comes before us for consideration of a motion for temporary release of the defendant filed pursuant to 18 U.S.C. § 3142(i), which provides that:

> The judicial officer may, . . ., permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. § 3142 (i).

In the instant case, the "compelling reason" which the defendant asserts justifies the defendant's temporary release from pre-trial detention is the COVID-19

1

pandemic that is sweeping the nation, and the dangers of infection which may result from close confinement in a custodial setting. This motion is fully briefed by the parties, and we have afforded all parties the opportunity to make evidentiary presentations in support of their respective positions regarding temporary release for the defendant.

Indeed, on this score we have conducted several proceedings to fully enable Diggs to develop the defendant's motion. First, we held a telephonic hearing in this case on April 14, 2020, where Mr. Diggs voiced medical concerns relating to what was described as mild or intermittent asthma which the defendant had experienced. When that hearing raised issues regarding the care and treatment that Diggs was receiving we ordered the government to secure the pertinent medical records relating to Mr. Diggs. We received those records which disclosed an asthma diagnosis but also contained notations reporting that Diggs was claiming that he was good health. Following a conference with counsel we gave Diggs an opportunity to further supplement the factual record. Diggs availed himself of that opportunity and we conducted a second hearing \in this case on April 27, 2020. Having provided Diggs with these opportunities to complete a record in support of his motion, this motion is ripe for resolution.

We acknowledge the gravity of the defendant's concerns, which are shared by all Americans as this nation faces a pandemic without precedent in the past century

of our nation's history. In addressing the instant motion, we must assess these individual medical concerns, apply the legal benchmarks mandated by Congress, and weigh these concerns against the important societal interests promoted by the Bail Reform Act, which calls for the detention of those defendants who present a danger to the community. Having conducted an individualized assessment of the facts and circumstances presented in this case, for the reasons set forth below it is ordered that the motion for temporary release is DENIED.

## II.   **Factual Background and Procedural History**

On May 8, 2019, the defendant was charged with the unlawful possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1).[1] The United States moved pursuant to 18 U.S.C. § 3142 to detain the defendant pending trial. Initial proceedings and a detention hearing were then conducted in this case on May 14, 2019.

At the time of these initial proceedings, the probation office prepared a comprehensive pre-trial services report, which provided the following information concerning the defendant's social and medical history, prior history of substance abuse, and criminal record: The defendant had been incarcerated in Dauphin County Prison since September 22, 2018, as he was unable to post bail set for his pending

---

[1] The reference to § 924 (e) in this indictment indicates that the Government believes Diggs to be an armed career criminal who would be subject to a mandatory 15-year sentence in the event of a conviction on this charge.

state charges, which included possession of a firearm with an altered serial number, possession of a controlled substance and drug paraphernalia, tampering with physical evidence, and fleeing or eluding the police. The report listed the defendant's lengthy criminal history beginning when he was fifteen years old, which included theft, possession of controlled substances, possession with intent to deliver controlled substances, fleeing/eluding the police, and escape. The pre-trial services report also recommended the defendant's detention based upon a careful evaluation of the following individual characteristics of the defendant: the offense charged; his history of substance abuse and violent behavior; his pending charges and criminal history; his history of weapons use and a pattern of similar criminal activity; and his compliance with pretrial, probation, parole or supervised release.

Following a hearing, we ordered the defendant detained pursuant to 18 U.S.C. § 3142, finding that the defendant presented a risk of flight and danger to the community, and that there was no condition or combinations of conditions which could assure the safety of the community or the defendant's appearance in court as required. On this score, we specifically found that the following factors supported the pre-trial detention of the defendant: the weight of the evidence against the defendant; the lengthy incarceration period the defendant faces on the charged offense; prior criminal history; history of substance abuse; and participation in criminal activity while on probation, parole or supervision. (Doc. 12).

The instant motion for temporary release does not focus upon or directly challenge any of these initial detention findings or determinations. Instead, the defendant's motion for release rests upon a concern shared by all: the risk of infection due to the current coronavirus pandemic. As the defendant notes, this risk of community spread is heightened in a custodial setting, where the very nature of confinement limits the ability of individuals to engage in the type of social isolation that is recommended to curb the spread of this disease. In addition, the instant motion sets forth a specific health concern unique to the defendant—that he suffers from intermittent or mild persistent asthma, a condition which the CDC has warned increases a person's risk of exposure to COVID-19.

The Government, in turn, opposes this motion, arguing that the defendant has not met his burden to justify his temporary release pending trial. Specifically, the government asserts that the defendant has provided no medical documentation of his condition and has not demonstrated that the conditions inside the Lackawanna County Prison have placed him at further risk of exposure to COVID-19. For the reasons that follow, we agree and the defendant's motion will be denied.

### III.  <u>Discussion</u>

#### A. <u>Temporary Release Under 18 U.S.C. § 3142</u>

While cast as a motion seeking temporary release under 18 U.S.C. § 3142 (i), this motion is best understood and evaluated in the context of the Bail Reform Act

as a whole. In the Bail Reform Act, 18 U.S.C. § 3141, *et seq.*, Congress created a

comprehensive set of statutory guidelines governing release and detention decisions

for criminal cases in federal court. As one court has recently observed:

> Before this Court can turn to the analysis under 18 U.S.C. § 3142(i), it
> is essential to look at the overarching structure of the statute. The
> fundamental precept of the Bail Reform Act mandates the release of
> individuals so long as the court can be reasonably assured the defendant
> does not pose a flight risk or danger to the community. 18 U.S.C. §
> 3142. To the extent that conditions, or a combination of conditions, can
> be fashioned to reasonably provide such assurances, the individual must
> be released, as detention is "the carefully limited exception." Id.; see
> also United States v. Salerno, 481 U.S. 739, 755 (1987).
>
> In assessing what conditions, if any, can be fashioned, judges are
> directed to take into account available information pertaining to the
> factors identified under 18 U.S.C. § 3142(g). Those factors include the
> nature and circumstances of the offense charged, including whether it
> involves controlled substances or firearms; the weight of the evidence
> against the defendant; the defendant's history and characteristics
> (including history relating to drug abuse, defendant's criminal history,
> and record of appearing at court proceedings); whether the detainee was
> on probation, parole, or other court supervision at the time of the
> allegedly offensive conduct; and the nature and seriousness of the
> danger to any person or the community posed by the defendant's
> release. 18 U.S.C. § 3142(g). Ultimately, the information provided in
> each case aids in the individualized assessment that will result in the
> release or the detention of the person.

United States of America v. Cox, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020).

Beyond this individualized assessment mandated by law, the Bail Reform Act

also enjoins us to weigh release and detention decisions against a series of statutory

presumptions. Principal among these presumptions which guide us in this custodial

calculus are a series of statutory presumptions in favor of detention for defendants

charged with violent crimes, serious drug trafficking offenses, or crimes involving the sexual exploitation of the most vulnerable in society, our children. As to these defendants, "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed," one of these enumerated offenses. 18 U.S.C. § 3142 (e)(3). In this regard, it is also well-settled that an "indictment [charging an enumerated offense] is sufficient to support a finding of probable cause triggering the rebuttable presumption of dangerousness under § 3142(e)." United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986).

Cast against this comprehensive statutory scheme prescribing the procedure for making initial bail and detention decisions, § 3142(i) constitutes a limited safety valve provision, enabling courts to re-examine detention decisions "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). Until recently, there was a relative paucity of case law construing for us what would constitute a "compelling reason" justifying the temporary release of a previously detained defendant. Of late, however, a rising tide of case law has construed the meaning and reach of § 3142(i) in the context of continuing custody decisions in the age of coronavirus.

From these cases a few guiding principles have emerged. First, the very nature of the standard prescribed by statute—which requires a showing of some "compelling reason" to warrant temporary release from custody—suggests that such motions must meet exacting standards and "the few courts that have ordered temporary release on the basis of such a condition have done so only 'sparingly' and typically in order 'to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries[,]' " United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *3 (D.D.C. Mar. 30, 2020) (quoting United States v. Hamilton, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)).

Second, like the initial decision to detain, a determination of whether a movant has shown compelling reasons justifying temporary release is an individualized judgment which takes into account the unique circumstances of each case and each defendant. Thus, courts have allowed for temporary release where a defendant's specific circumstances presented a compelling and immediate need for release. For example, release of a defendant is permitted under § 3142(i) when that defendant is suffering from a terminal illness or serious injuries. See, e.g., United States v. Scarpa, 815 F. Supp. 88 (E.D.N.Y. 1993) (permitting release of defendant suffering from terminal AIDS that could no longer be managed by correctional authorities); see also United States v. Cordero Caraballo, 185 F. Supp. 2d 143 (D.P.R. 2002)

(permitting release where defendant sustained "serious" and "grotesque" gunshot wounds, suffered a heart attack, underwent an emergency tracheotomy, was partially paralyzed, could not use his hands, and had open and infected wounds about his body, and where the United States Marshal's Service reused to take custody of him until his wounds closed).

There is a necessary corollary to this principle, calling for an individualized and specific showing of a compelling reason to satisfy the movant's burden of proof under § 3142(i). Cases construing § 3142(i) generally "have rejected emergency motions for release of otherwise healthy and potentially violent defendants based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020) (citing United States v. Cox, No. 19-cr-271, 2020 WL 1491180 (D. Nev. Mar. 27, 2020)); United States v. Green, No. 19-cr-304, 2020 WL 1477679 (M.D. Fla. Mar. 26, 2020); United States v. Steward, No. 20-cr-52, 2020 WL 1468005 (S.D.N.Y. Mar. 26, 2020); United States v. Hamilton, No. 19-cr-54, 2020 WL 1323036 (E.D.N.Y. Mar. 20, 2020); see also United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). Rather, at a minimum courts have typically required proof of a "[d]efendant's particular vulnerability to the disease [in order to] constitute a compelling reason for release under § 3142(i)." United States of Am. v. Keith Kennedy, No. 18-20315, 2020 WL

1493481, at *4 (E.D. Mich. Mar. 27, 2020), <u>reconsideration denied sub nom.</u> <u>United</u>

<u>States v. Kennedy</u>, No. 18-20315, 2020 WL 1547878 (E.D. Mich. Apr. 1, 2020).

The United States Court of Appeals for the Third Circuit has very recently

underscored for us the necessity of a more particularized showing of a compelling

need for release beyond proof of the generalized risks posed by COVID-19 when a

prisoner seeks release from jail. Addressing this question in another custodial

setting, petitions for compassionate release from custody, the court of appeals stated

in terms that are equally applicable here that:

> We do not mean to minimize the risks that COVID-19 poses in the . . .
> prison system, particularly for inmates . . . . But the mere existence of
> COVID-19 in society and the possibility that it may spread to a
> particular prison alone cannot independently justify . . . release.

<u>United States of America v. Raia</u>, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir.

Apr. 2, 2020).

Finally, any determination of whether a movant has established compelling

reasons which now warrant temporary release from custody must take into account

the important considerations of public safety and flight which animated the original

decision to detain the offender pending trial. Thus, "in considering the propriety of

temporary release, the court would need to balance the reasons advanced for such

release against the risks that were previously identified and resulted in an order of

detention." <u>United States of America v. Cox</u>, 2020 WL 1491180, *2 (D. Nev. Mar.

27, 2020). In practice, therefore, a decision on a motion seeking release under §

3142(i) entails an informed judgment assessing both individual health concerns and broader public safety interests. In reaching these judgments the court must:

> [E]valuate at least the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary." § 3142(i)

United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020).

It is against this statutory backdrop that we evaluate the instant request for temporary release from custody.

## B. The Defendant's Motion for Temporary Release Will Be Denied.

Our analysis of this motion begins with the proposition that "[w]hile the COVID-19 pandemic has given rise to exceptional and exigent circumstances that require the prompt attention of the courts, it is imperative that they continue to carefully and impartially apply the proper legal standards that govern each individual's particular request for relief." United States v. Roeder, No. 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020). In this case, our careful and impartial application of the legal standards mandated by § 3142(i), requires us to assess both the public safety grounds for the defendant's initial detention as well as:

(1) the specificity of the defendant's stated COVID-19 concerns; (2) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant; and (3) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. To the extent the defendant is requesting that we abandon the <u>Clark</u> test in favor of a broader assessment of a defendant's well-being in the prison setting, we note that our Court of Appeals continues to use the <u>Clark</u> factors, including the specificity factor, to individually assess a defendant's motion for pretrial release during the COVID-19 pandemic. <u>Raia</u>, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020).

Turning first to an individualized evaluation of the defendant's COVID-19 concerns, our assessment begins with a recognition of the unprecedented health care crisis presented by the coronavirus pandemic. However, it is clear that under § 3142(i), we cannot grant release of a defendant previously deemed to be a danger to public safety or a risk of flight "based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." <u>United States v. Lee</u>, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020). In this case, in addition to the generalized concerns regarding COVID-19 in the prison setting, the defendant asserts that he suffers from asthma, a condition which the CDC has warned can increase an individual's exposure to the virus. However, we have found numerous cases from courts who have had the opportunity to consider whether

asthma justifies pre-trial release, and the vast majority of courts have determined that it does not. See, e.g., United States v. Christian, 2020 U.S. Dist. LEXIS 60103 (D. Md. Apr. 6, 2020) (denying temporary release on grounds of underlying asthma diagnosis); United States v. Tucker, 2020 U.S. Dist. LEXIS 59516 (D. Md. Apr. 3, 2020) (collecting cases) (severe asthma, high blood pressure and high cholesterol insufficient to justify temporary release); United States v. Pritchett, CR 19-280, 2020 WL 1640280, *3 (W.D. Pa. Apr. 2, 2020) (asthma diagnosis insufficient to grant temporary release); United States v. Crosby, 2020 U.S. Dist. LEXIS 58189 (D. Md. Apr. 2, 2020) (previous diagnosis of pneumonia, asthma, and a need for an albuterol inhaler insufficient to allow temporary release); United States v. Jones, 2:19-CR-00249-DWA, 2020 WL 1511221, *3 (W.D. Pa. Mar. 29, 2020) (hypertension, sleep apnea, and asthma were not sufficient to grant temporary release); United States v. Gileno, 2020 U.S. Dist. LEXIS 47590 (D. Conn. Mar. 19, 2020) (high blood pressure, high cholesterol, asthma, and allergies insufficient to allow temporary release).

These cases are particularly important to our analysis here, given the highly equivocal nature of the evidence. On this score, Diggs' factual presentations have been marked by contradictions and some confusion. For example, while Diggs has asserted that he suffers from either intermittent or mild persistent asthma and the medical records provided to us by the Lackawanna County Prison contain one

notation that the defendant suffers from asthma, those records also reveal that Diggs claimed to prison officials that he was in good health. In addition, these records reveal continuing confusion regarding Diggs' access to an inhaler. While the defendant testified that he requested an inhaler from medical staff and was not provided with one, he also testified that when he was later approached by the medical staff about his request and he opted to speak with his attorney rather than communicate his needs to the medical staff at Lackawanna County Prison. Diggs subsequently reached out to medical staff at the urgings of his counsel but described for us a confused and confusing exchange with medical personnel. Thus, while Diggs has experienced a delay in receiving an inhaler, that delay is not attributable to any deliberate indifference to his needs in our view. Instead, it may reflect inadvertence, confusion, and some contradictory positions taken by the defendant. This matter should be corrected so Diggs receives an inhaler if it is medically necessary, but in any event caselaw makes it clear that simply because a defendant suffers from asthma does not mean he is entitled to pretrial release.[2]

We also must weigh these health concerns against the substantial public safety considerations which led us to order the defendant's detention in the first instance.

---

[2] We note that to the extent Mr. Diggs has not yet received an inhaler, the Government and defense counsel are advised to work with the officials at Lackawanna County Prison to ensure that the defendant's medical needs are being addressed.

In this case, the following factors, unique to the defendant, compelled the decision to detain the defendant as a risk of flight and danger to the community: the weight of the evidence against the defendant is strong; the defendant faces a lengthy incarceration period on the charged offense; his prior criminal history spans over a decade and includes charges of drug possession and distribution, theft, fleeing the police, and escape; he has a history of substance abuse; and the defendant engaged in criminal activity while on probation, parole or supervision. (Doc. 12). The defendant's motion does not address these very serious and grave considerations that ultimately led to the defendant's detention in the first instance, nor does it consider the risk to the community should the motion for release be granted.

Finally, to the extent the defendant raises Eighth Amendment concerns relating to a prisoner's incarceration in a custodial setting during this pandemic, this argument fails as a matter of law for several reasons. At the outset, Diggs' reliance upon the Eighth Amendment is misplaced. As a legal matter it is well-settled that "[p]retrial detainees are not within the ambit of the Eighth Amendment but are entitled to the protections of the Due Process clause." Boring v. Kozakiewicz, 833 F.2d 468, 471 (3d Cir. 1987). We note that the defendant is a pretrial detainee, and as such, does not have a claim under the Eighth Amendment regarding the conditions at Dauphin County Prison. See Graham v. Connor, 490 U.S. 386, 392 n. 6 (1989) (holding that "the Eighth Amendment's Cruel and Unusual Punishments Clause does

not apply until 'after sentence and conviction'"); Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005). Rather, a pretrial detainee's claims regarding the conditions of his confinement fall within the ambit of the Fifth Amendment's Due Process clause, and the proper inquiry is "whether [the conditions of confinement] amount to punishment of the detainee." Bell v. Wolfish, 441 U.S. 520, 535 (1979); see also Davis v. City of Philadelphia, 284 F.Supp.3d 744, 752 (E.D. Pa. 2018); Umarbaev v. Lowe, 2020 WL 1814157 (M.D. Pa. April 9, 2020) (Kane, J.).

On this score, it is well-settled that pretrial detention under 18 U.S.C. § 3142, on its face, does not violate the Fifth Amendment Due Process Clause. United States v. Salerno, 481 U.S. 739, 742 (1987). Rather, only when the conditions amount to punishment, and the detention is not reasonably related to a legitimate penological goal, are a pretrial detainee's due process rights violated. See Bell, 441 U.S. at 539; Habbard, 399 F.3d at 159-60. Thus, "[a]bsent showing of an expressed intent to punish on the part of the detention facility officials, ... if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" United States v. Cook, No. 3:16-CR-312 (M.D. Pa. April 22, 2020) (Mehalchick, M.J.) (quoting Bell, 441 U.S. at 538-39). Specifically, in the context of the recent COVID-19 pandemic, several courts have declined to hold that a pretrial detainee's due process rights are violated simply because they are incarcerated and at a higher risk of contracting the

virus. <u>See e.g.</u>, <u>Cook</u>, No. 3:16-CR-312 (M.D. Pa. April 22, 2020) (Mehalchick, M.J.); <u>United States v. Frost</u>, 2020 WL 1899561, at *4 (E.D. Mich. April 17, 2020); <u>United States v. Leake</u>, 2020 WL 1905150, at *5 (D.D.C. April 17, 2020); <u>United States v. Stevens</u>, 2020 WL 1888968, at *5 (E.D. Pa. April 16, 2020).

Here, the defendant asserts that the conditions at Lackawanna County Prison are inadequate and further expose pretrial detainees to the dangers of contracting COVID-19. While a number of the conditions alleged by Diggs would clearly be uncomfortable and unpleasant, nothing in Diggs' presentation supports an inference that prison officials are imposing these conditions on the defendant as a punitive measure. Quite the contrary, the Government has provided us with updates from the Lackawanna County Prison that outline the precautionary steps taken by prison officials to combat the contraction and spread of COVID-19 in the prison. Indeed, as of the date of this memorandum, there has been only one confirmed case of COVID-19 from Lackawanna County Prison, and the prison took steps to quarantine that individual and others who came into contact with this staff member. Thus, we find that the defendant has not shown that the conditions of his confinement at Lackawanna County Prison have violated his right to Due Process under the Fifth Amendment.

Even if we accepted Diggs' invitation to assess the defendant's challenge to these prison conditions under the Eighth Amendment, this claim would still fail.

Under the Eighth Amendment, a prisoner's rights are violated when prison officials are deliberately indifferent to a serious risk of harm. Farmer v. Brennan, 511 U.S. 825, 834 (1994). In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of harm.' A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.'" Garvey v. Martinez, 2010 WL 569852, at *6 (M.D. Pa. Feb. 11, 2010) (quoting Farmer, 511 U.S. at 837, 841)). As we have noted:

> "When an Eighth Amendment claim arises in the context of a challenge to conditions of confinement, we must determine if prison officials acted with 'deliberate indifference' to the inmate's health. Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The objective inquiry is whether the inmate was 'denied the minimal civilized measure of life's necessities.' Hudson, 503 U.S. at 9, 112 S.Ct. 995, 117 L.Ed.2d 156." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir.2000).

Smith v. Donate, No. 4:10-CV-2133, 2012 WL 3537017, at *13 (M.D. Pa. June 15, 2012), report and recommendation adopted, No. 4:10-CV-2133, 2012 WL 3537008 (M.D. Pa. Aug. 15, 2012). Further, it is undeniably clear that "the Constitution does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349, 101 S. Ct. 2392, 2400, 69 L. Ed. 2d 59 (1981).

Judged by these exacting standards, Diggs' Eighth Amendment conditions of confinement claims fail. On this score, the evidence indicates that the prison officials have not been deliberately indifferent to the defendant's needs, but rather are taking

affirmative steps to prevent the outbreak and spread of COVID-19. The officials at Lackawanna County Prison have suspended regular and contact visitation, have implemented aggressive hand-sanitizing protocols, and continue to educate inmates on ways to stay safe and healthy. Additionally, there has only been one confirmed case of COVID-19 in the prison, and the prison took steps to quarantine that individual staff member and those who had come into contact with that staff member. Simply put, the prison has implemented specific health and safety protocols to combat the outbreak and spread of COVID-19 in Lackawanna County Prison, actions that can hardly be characterized as "deliberate indifference" that would constitute an Eighth Amendment violation.

Finally, we note that this very general and sweeping argument attacking custodial conditions at this facility is in our estimation simply too broad in its reach to constitute the type of specific compelling reason for release contemplated by § 3142(i). Indeed, if we embraced the view espoused here by Diggs, we would be compelled to release *all* detainees housed at this facility simply because of the general conditions of their confinement. Since Diggs has not shown that those conditions of confinement are imposed in a punitive manner or deny detainees the minimal civilized measure of life's necessities, we will decline this invitation.

## IV.    **Conclusion**

Weighing and balancing these countervailing considerations we conclude that the safety concerns that led us to order the detention of the defendant pending trial have not been overcome by the defendant's concerns regarding the spread of or exposure to the COVID-19 virus while incarcerated. Based upon these findings, the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i) will be DENIED. "Because the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are compelling reasons that justify the defendant's release. United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020). Therefore, this order is entered without prejudice to renewal of this motion at some future date should the defendant's circumstances materially change.

An appropriate order follows.

So ordered this 28th day of April 2020.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 1:19-CR-150** |
| | : | |
| **v.** | : | **(Judge Mannion)** |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **LAZERICK JAMAL DIGGS** | : | |

## ORDER

In accordance with the accompanying Memorandum Opinion, the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i) is DENIED. "Because the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are compelling reasons that justify the defendant's release. United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020). Therefore, this order is entered without prejudice to renewal of this motion at some future date should the defendant's circumstances materially change. Counsel are directed to cooperate and consult with prison officials to ensure that the defendant receives an inhaler while in custody if that is medically necessary or advisable.

So ordered this 28th day of April 2020.


                                             */s/ Martin C. Carlson*
                                             Martin C. Carlson
                                             United States Magistrate Judge